## Kenton County et al. v. City of Covington et al.

June 4, 1946.

Stephens L. Blakely and Blakely & Blakely for appellants.

Martin J. Brown, John L. Cushing and Stanley Chrisman for appellees.

OPINION OF THE COURT BY JUDGE DAWSON—Affirming.

Banklick Creek rises in the highlands of Kenton County and flows eastwardly to the Licking River. The creek juts northwardly to the City of Covington and forms a part of the boundary of that city. At this point the stream forms a bend and this stretch is called "Horseshoe Bend". "Horseshoe Bend" is approximately one mile long, and along this stretch the fall of the creek is gradual, being only three feet in the mile. The cities of Covington and Winston Park on the north bank of the creek are low and thickly populated. Forrest Hills, a residential community, is situated on a bluff to the south, and the thread of the stream is the dividing line between the incorporated and unincorporated areas. This stretch is composed of a number of pools and during dry weather the flow of water in the bend is very slow due to the gradual grade, but the creek flows quite rapidly a short distance below the bend where the creek is straight and not so wide.

The series of pools in the bend of the creek, particularly during dry weather, catch and hold water which has a tendency to become stagnant, and from these stagnant pools there arises an obnoxious odor and stench, causing an unsanitary condition which the county health department of Kenton County calls a public nuisance. Undoubtedly the condition of the creek at this bend creates a health hazard to the detriment of those living in the community, both to the north and south of the creek. This unsanitary condition is minimized below the bend where the flow is more rapid. The condition is largely caused by the emptying of sewers into the creek. An engineers' report, which will be referred to later, shows that the three main causes of the unsanitary conditions which exist in the creek are: (1) City of Covington sewers emptying into the creek, (2) Innumerable open sewers and septic tanks in the unincorporated areas to the north flowing into the creek, and (3) Odors other than raw sewage probably caused by an industrial plant located on the creek.

For several years the people affected by this condition have attempted to have the nuisance abated without success, but in 1945, in response to repeated demands of, the residents of the neighborhood affected, the Board of Commissioners of Covington, and the Fiscal Court of Kenton County held a joint meeting at

which both bodies resolved to lend wholehearted cooperation to a plan to correct these conditions and each appropriate its share of the cost on a prorata basis, in accordance with the respective responsibilities. At that same meeting it was determined that a fair division of such cost would be 60% to be borne by the city and 40% by the county, and the city and county jointly employed an engineering firm to investigate the situation and make recommendations. Briefly, these engineers reported that the situation could be corrected by cutting a new channel through the neck of the horseshoe bend, which would be 1,100 feet in length, thus eliminating the pools in the present channel, and by the construction of a sewer. The engineers' report was accepted by both the city and county and they agreed to carry the plan into effect, the city to pay 60% of the cost and the county 40%. A short while later the fiscal court was advised by the Attorney General that the county had no authority to expend county funds for the purpose of constructing a sewer, and it rescinded all its actions in connection with the plan. Thereupon the county brought this action under the declaratory judgment provision of the Civil Code of Practice, sec. 639a—1 et seq., asking that the court determine whether or not it has the authority to appropriate money for the abatement of the nuisance by the construction of a sewer.

An intervening petition was filed by two taxpayers asking that the county be required to expend the funds necessary to abate the nuisance. Proper pleadings made up the issues and proof was taken which shows beyond doubt that the condition of Banklick Creek at the point of this bend is unsanitary and unhealthy and is a menace to the health of the residents of that immediate community. It would serve no purpose to detail the testimony of the various witnesses, it being sufficient to say that the pleadings and the evidence properly presented the question as to whether Kenton County has the right under the law to contribute to the cost of abating the nuisance.

Upon submission the lower court determined that the county had the legal right to enter into a contract with the City of Covington to eliminate the existing nuisance, in accordance with the specifications submitted by the engineers. The county appeals.

The engineers' report shows that for complete and satisfactory relief it will be absolutely necessary to install an 18″ sanitary sewer and straighten the course of the creek in the manner heretofore indicated. They estimated the cost of this work to be $144,000, exclusive of the cost of right-of-ways. This estimate is divided so that it shows that the estimated cost of the sewer construction is $92,000 and the cost of the ditching $52,000.

The authority to expend county funds depends upon the powers granted to a county by the Constitution and Statutes. Section 162 of the Constitution provides that no county is authorized or permitted to pay any claim created against it without express authority of law. The powers of a fiscal court are enumerated in Section 67.-080, KRS. Section 68.240, KRS provides that all expenditures of a county must be classified into budget units, one of which is general health and sanitation. In construing the Constitution and the applicable Statutes we held, in Jefferson County v. Jefferson County Fiscal Court, 269 Ky. 535, 108 S. W. 2d 181, that a fiscal court was not authorized to appropriate money to repair a break-in of a sewer which threatened the spread of epidemic disease, notwithstanding the provisions of the Statutes relating to health and sanitation. Manifestly if there is no authority to expend county funds to repair a sewer, although the condition of such sewer created a menace to the public health, there is no authority to build a sewer. On the authority of that opinion we are constrained to hold that the county is not authorized by law to contribute to the cost of constructing the proposed sewer.

However, construction of the sewer is only a part of the plan to eliminate the nuisance which exists. In order to achieve the desired result it is also necessary to ditch or dredge a new channel for the creek, and the engineers' report has broken down its total estimate so as to show the respective cost of the sewer and of the ditch. It is argued for the City that even though the county may not be authorized to expend its funds for the construction of a sewer, it is authorized to bear the cost of the ditching which will be necessary to complete the plan for the elimination of the conditions which are complained about. Section 269.070, KRS provides: "Any county may remove any ponds, pools or swamp

marshes, or reclaim swamp land that may cause sickness in the county, by ditching, leveeing or cleaning out logs and brush that may cause any creek to scatter or form pools of stagnant water. The cost shall be paid for out of the county levy or by taxation of the property in the county subject to taxation for state purposes. When the fiscal court undertakes such a project it may acquire for the county by contract or condemnation any land necessary to carry out the project. If condemnation proceedings are necessary, they shall be conducted in the manner provided in KRS 416.010 to 416.080.''

Under the proposed plan the ditch to change the channel of the creek is for the purpose of eliminating the pools of stagnant water, and it seems to us that this Statute is specific authority for the county to bear the cost of this part of the proposed plan. In addition the section quoted provides that if the fiscal court undertakes such a project it may, if necessary, acquire land either by contract or condemnation. This, we believe, authorizes the county to expend its funds for: (1) The cost of the new channel, and—(2) The cost of the right-of-way for the channel.

The proposed pro-rata of the cost of the elimination of the conditions complained of is not out of line with the respective cost of the sewer and of the ditch. Doubtless the cost of the ditch, plus the cost of the right-of-way would approximate the pro-rata division of the cost as originally agreed to by the city and county.

To the extent set forth herein the county is authorized to cooperate with the city in eliminating a nuisance which is detrimental to the health of the residents of the community affected.

Judgment affirmed.